IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01202-PAB-KLM

DEREK THOMPSON, individually and as Personal Representative of the Estate of Cynthia Thompson,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

---

# ORDER

---

This matter is before the Court on Defendant State Farm's Motion for Summary Judgment [Docket No. 58]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

This case arises out of a dispute over underinsured motorist ("UIM") benefits. On August 11, 2013, Cynthia Thompson was a passenger in a motor vehicle accident with an underinsured driver. Docket No. 58 at 2, ¶ 3. Ms. Thompson claimed that she suffered injuries, damages, and losses as a result of the accident. *Id.*, ¶ 4. On December 3, 2013, the underinsured driver's insurance carrier paid Ms. Thompson $25,000, the limits of the driver's insurance policy, to settle her claim for liability. *Id.*, ¶ 6. On February 5, 2014, Ms. Thompson died in her sleep. *Id.*, ¶ 7. Her autopsy revealed that she had a 50 mcg/hr fentanyl transdermal patch on her upper back. *Id.*, ¶ 9. The postmortem examination report further stated that Ms. Thompson's lungs showed evidence of pulmonary congestion and edema and that she had multiple drugs

in her system, including diazepam and fentanyl. *Id.*, ¶ 10. The Certificate of Death lists "Respiratory Arrest" and "Multiple prescription drug intoxication" as the "Immediate Cause" of Ms. Thompson's death. *Id.* at 3, ¶ 12. It is undisputed that Ms. Thompson was not prescribed fentanyl at any time between August 11, 2013 and February 5, 2014. *Id.* at 2-3, ¶¶ 5, 13.

At some time before August 11, 2013, defendant issued four automobile insurance policies, each with a $100,000 UIM limit, to Ms. Thompson's parents. *Id.* at 3, ¶ 17; Docket No. 4 at 4, ¶ 43. Those policies were in effect at the time of the accident that injured Ms. Thompson. Docket No. 58 at 3, ¶ 17.[1] On June 18, 2014, plaintiff's counsel informed defendant that plaintiff would be pursuing a wrongful death claim as well as a survival action on behalf of Ms. Thompson's estate. *Id.*, ¶ 14. On July 31, 2014, defendant advised counsel that, while it was continuing to investigate plaintiff's insurance claims, defendant did not have sufficient documentation to determine whether Ms. Thompson's death was a direct result of the motor vehicle accident. *Id.* at 4, ¶ 20. Plaintiff was appointed personal representative of Ms. Thompson's estate on March 9, 2015. *Id.* at 4, ¶ 22. On April 1, 2015, defendant informed plaintiff that it had offered to settle his survival claim for $69,700, but still needed documentation showing that Ms. Thompson's death was the result of the motor vehicle accident in order to determine whether plaintiff was entitled to additional benefits. *Id.*, ¶ 24. On October 26, 2015, defendant sent plaintiff another letter

---

[1] Although the issue is not addressed in the statement of undisputed facts, there appears to be no dispute that Ms. Thompson was covered by these insurance policies at the time of the accident.

informing him that, because it had not received additional documentation regarding the cause of Ms. Thompson's death, it would not pay any benefits beyond the $69,700 that was offered to settle the survival claim. *Id.* at 5, ¶ 25.

Plaintiff filed this lawsuit on April 5, 2016 in the District Court for Mesa County, Colorado. *See* Docket No. 4 at 1. On May 20, 2015, defendant removed the case to this Court on the basis of diversity jurisdiction. *See* Docket No. 1 at 1. In his amended complaint, plaintiff asserts Colorado state law claims for: (1) declaratory judgment; (2) breach of contract; (3) common law bad faith breach of an insurance contract; and (4) unreasonable denial of UIM benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. Docket No. 4 at 6-12. Defendant moved for summary judgment on all claims on June 8, 2017. Docket No. 58. On June 29, 2017, plaintiff filed a preliminary response to defendant's motion as well as a motion for relief under Fed. R. Civ. P. 56(d), requesting that the Court defer ruling on the motion for summary judgment to allow plaintiff additional time to conduct discovery. Docket Nos. 59, 60. After the close of expert discovery on January 15, 2018, the Court ordered the parties to file supplemental briefs regarding the motion for summary judgment. Docket No. 99. Plaintiff filed his supplemental response on January 30, 2018, Docket No. 109, to which defendant replied on February 13, 2018. Docket No. 110.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the

4

evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Declaratory Judgment and Breach of Contract

In his first claim for relief, plaintiff seeks a declaratory judgment that "he is entitled to UIM benefits under the State Farm policies, in an amount to be determined at trial." Docket No. 4 at 7, ¶ 69. In his second claim, plaintiff contends that defendant breached the terms of the relevant insurance policies by refusing to pay plaintiff UM/UIM benefits for Ms. Thompson's death. *See id.* at 7-10, ¶¶ 73-103. Defendant seeks summary judgment on both claims, arguing that plaintiff has failed to present any evidence establishing that the August 11, 2013 automobile accident proximately caused Ms. Thompson's death. *See* Docket No. 58 at 8-9.

The parties have not included copies of the relevant insurance policies in the summary judgment record. However, they appear to agree that Colorado tort law governs the causation issue in this case. *See* Docket No. 58 at 8-9 (applying Colorado tort law on proximate causation); Docket No. 59 at 12-14 (same). Applying Colorado tort law to the issue of proximate causation comports with Colorado's uninsured/underinsured motorist ("UM/UIM") benefits statute, which provides:

> No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42-7-103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder *who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury, sickness, or disease,

5

including death, resulting therefrom . . . .

Colo. Rev. Stat. § 10-4-609(a)(1) (emphasis added). The statute further states:

> [u]ninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is *legally entitled* to collect from the owner or driver of an underinsured motor vehicle.

*Id.*, § 10-4-609(a)(4) (emphasis added). Courts have interpreted these provisions as requiring insurers to "pay to the insured, up to the limit of the policy, whatever losses the insured proves he or she is 'legally entitled to recover' from the uninsured motorist." *Briggs v. Am. Family Mutual Ins. Co.*, 833 P.2d 859, 861 (Colo. App. 1992).[2] Thus, to trigger an insurer's duty to pay UM/UIM benefits under § 10-4-609, an insured has the burden of proving: "(1) that the uninsured motorist was negligent; and (2) the extent of [the] damages." *Martin v. Am. Family Mutual Ins. Co.*, No. 11-cv-03095-WYD-MEH, 2012 WL 1672921, at *2 (D. Colo. May 14, 2012) (citing *Briggs*, 833 P.2d at 861). Establishing that an uninsured driver was negligent necessarily implicates Colorado tort law. *See Walker v. Am. Standard Ins. Co. of Wis.*, No. 11-cv-00927-LTB, 2011 WL 3876901, at *3 (D. Colo. Sept. 2, 2011) (stating that "[d]etermining whether a plaintiff was 'legally entitled to recover' from a third-party implicates Colorado tort law" and thus plaintiff's comparative negligence could preclude recovery of UM/UIM benefits); *see also Martin*, 2012 WL 1672921, at *2 (finding that negligence claim against uninsured motorist could "establish[] his liability and Plaintiff's damages," thereby triggering defendant's "obligation to pay Plaintiff her UM coverage").

---

[2]Defendant asserts that, as Ms. Thompson's sole surviving heir, he is an "insured" for purposes of recovering UM/UIM benefits. Docket No. 4 at 4-5, ¶¶ 47, 50. Defendant does not dispute this point on summary judgment.

Under Colorado law, a claim for negligence requires a showing of four elements: (1) the existence of a legal duty; (2) breach of that legal duty; (3) causation; and (4) damages. *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015). The third element – causation – has two components: actual cause and proximate or legal cause. *See Moore* v. *W. Forge Corp.*, 192 P.3d 427, 436 (Colo. App. 2007). Actual cause asks whether the defendant's negligence was the but-for cause of the plaintiff's harm, *see Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 987 (Colo. App. 2011), whereas the proximate cause inquiry addresses whether "it is foreseeable that the defendant's negligence will result in injuries to others." *Build It and They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 306 (Colo. 2011).

Proximate cause principles reflect "an attempt to spell out rules of law limiting the liability of a negligent actor, using the *language* of causation." *Moore*, 192 P.3d at 436. "[F]oreseeability is the touchstone of proximate cause." *Westin Operator, LLC*, 347 P.3d at 614 n. 5. Thus, a defendant's wrongful conduct is not the proximate cause of a plaintiff's injuries "if, in order to bring about such injuries, it was necessary that the conduct combine or join with an intervening cause which also contributed to cause the injuries, but which intervening cause would not have been reasonably foreseen by a reasonably careful person under the circumstances." *Moore*, 192 P.3d at 436. Whether an intervening cause was reasonably foreseeable is ordinarily a question of fact for the jury. *Westin Operator, LLC*, 347 P.3d at 614 n.5. However, the question of proximate cause may be decided as a matter of law "when reasonable minds could draw but one inference from the evidence." *Walcott v. Total Petroleum, Inc.*, 964 P.2d

609, 612 (Colo. App. 1998). Under the proximate cause inquiry, the determination of whether a particular risk was foreseeable as a matter of law "depends in part on the common sense consideration of the risks created by various conditions and circumstances . . . and in part on the policy consideration of whether a defendant's responsibility should extend to the results in question." *Id.*

According to the Certificate of Death and postmortem examination report, Ms. Thompson died on February 5, 2014 as a result of respiratory arrest caused by multiple drug intoxication. *See* Docket No. 59-10 at 1.[3] Defendant argues that plaintiff has failed to create a genuine dispute of fact as to whether the conduct of the underinsured motorist was the proximate cause of Ms. Thompson's death. Docket No. 58 at 9. Defendant contends that, "even if the Court accepts Plaintiff's assertion that Cynthia Thompson's death was caused by her use of Diazepam and Fentanyl due to injuries that she sustained in the motor vehicle accident, Cynthia Thompson's use of non-prescribed Fentanyl with Diazepam would not have been reasonably foreseen by a reasonably careful person under the circumstances." *Id.* at 9. Plaintiff responds that "[i]t is foreseeable that a person injured by a tortfeasor will seek to relieve their pain from their injuries through medical care and treatment, prescription medications, over-the-counter medications, and a variety of other avenues," including the use of a prior prescription of fentanyl. Docket No. 59 at 13.

Although Colorado courts have not addressed whether an automobile accident

---

[3] The Certificate of Death lists Ms. Thompson's death as an "accident." Docket No. 59-10 at 1. For purposes of its summary judgment motion, defendant does not argue otherwise. *See* Docket No. 58 at 8 ("For purposes of this motion for summary judgment, State Farm is not arguing that Cynthia Thompson committed suicide.").

8

may be held to be the proximate cause of an individual's later overdose on pain medication, a number of state and federal courts presented with similar circumstances have denied summary judgment on the issue of proximate causation. *See, e.g.*, *Paul v. State Farm Mutual Automobile Ins. Co.*, 2016 WL 5407734, at *28 (W.D. Pa. Sept. 28, 2016) (finding genuine issue of fact as to whether car accident was proximate cause of decedent's death by heroin overdose); *Clemons v. Miele*, 2013 WL 3802415, at *6 (Conn. Super. Ct. July 2, 2013) (denying summary judgment where there were unresolved issues regarding the relationship between decedent's overdose death and preceding motor vehicle collision); *Rice v. W. 37th Grp.,* LLC, 949 N.Y.S.2d 7, 8-9 (N.Y. App. Div. 2012) (finding "the issue of whether the accidental overdose of prescribed pain medication was a foreseeable consequence of the serious injuries suffered by plaintiff's decedent" to be "a question for the trier of fact"); *Keusch v. Farm Bureau Ins. Co.*, 2011 WL 3821275, at *5 (Mich. App. Aug. 30, 2011) (finding genuine dispute of fact as to whether decedent's drug overdose was proximately caused by automobile accident); *Leja v. Schmidt Mfg., Inc.*, 2010 WL 2681975, at *7 (D.N.J. July 1, 2010) (concluding that reasonable jury could find that decedent's overdose on alcohol was the direct result of "injuries and attendant trauma" suffered as a result of workplace accident); *Wetstein v. W. Terrace Constr. Co.*, 1999 WL 504910, at *4 (S.D.N.Y. July 16, 1999) (finding sufficient evidence that "decedent's drug usage [was] occasioned by his accident-related pain" to deny summary judgment on proximate causation issue); *Bak v. Burlington N., Inc.*, 417 N.E. 2d 148, 149-50 (Ill. App. 1981) (declining to hold as a matter of law that there was "no legally foreseeable causal relationship" between the

injuries sustained by the decedent during a slip-and-fall accident and her later overdose on painkillers). In all but one of these cases, however, there was evidence showing either that (1) a medication specifically prescribed to treat pain resulting from the original accident caused the decedent's overdose, *see, e.g.*, *Clemons*, 2013 WL 3802415, at *6 & n.8 (declining to decide whether a finding of proximate causation "requires the medication be prescribed as a result of the initial injury" because defendant had failed to show that the drug that caused the decedent's death was unrelated to the decedent's prescribed medications); *Rice*, 949 N.Y.S.2d at 8-9 (finding jury question as to "whether the accidental overdose of prescribed pain medication was a foreseeable consequence of the serious injuries suffered by plaintiff's decedent"); *Keusch*, 2011 WL 3821275, at *5 (denying summary judgment where there was a genuine issue of fact regarding whether illegal cocaine use or prescribed fentanyl patch caused decedent's overdose); *Bak*, 417 N.E. 2d at 149-50 (denying summary judgment where the drug that caused overdose death had been "prescribed as a result of the primary injury"); or (2) the accident caused a cognitive or psychological injury that impaired the decedent's judgment. *See, e.g.*, *Paul*, 2016 WL 5407734, at *28 (denying summary judgment where plaintiff's proximate cause theory was that "the automobile accident caused a severe head injury with symptoms of pain, headache, loss of functioning, and depression that Plaintiff's expert opine[d] resulted in impaired judgment and impulse control that was a substantial contributing cause to Christopher's heroin use and his death"); *Leja*, 2010 WL 2681975, at *4, *6 (denying summary judgment where evidence showed that decedent's overdose on alcohol was the direct result of

10

PTSD caused by workplace accident). *But see Wetstein*, 1999 WL 504910, at *4 (denying summary judgment on proximate causation issue based on evidence showing that decedent's illicit use of heroin and morphine was "occasioned by his accident-related pain").

Neither of those circumstances is present in this case. The Certificate of Death, postmortem autopsy examination, and toxicology report indicate that Ms. Thompson died from respiratory suppression caused by multiple drug intoxication. Docket No. 59-10 at 1-2, 7. Of the two drugs listed in the postmortem examination report as "capable of producing respiratory suppression and sudden death" when used in combination, *id.* at 2, diazepam and fentanyl, only the diazepam was prescribed for injuries sustained in the August 11, 2013 car accident. *See* Docket No. 58-2 at 2, ¶ 11. Although there is evidence showing that Ms. Thompson was prescribed fentanyl in 2010 for pain unrelated to the car accident, it is undisputed that she was not prescribed the drug at any time between August 11, 2013 and her death on February 5, 2014. *See* Docket No. 58 at 2, ¶ 5; *see also* Docket No. 59-16 at 1 (Colorado Prescription Drug Monitoring Database printout showing November 16, 2010 as date of last fentanyl prescription). Plaintiff's toxicology expert, William Boroughf, D.O., suggested that the fentanyl patch found on Ms. Thompson's body after her death may have been left over from a prior prescription, *see* Docket No. 109-5 at 6; however, plaintiff has proffered no evidence that Ms. Thompson applied the patch at the direction of one of her doctors. In fact, Dr. Boroughf opined that Ms. Thompson's death appeared to have been "related to inappropriate usage of a left-over fentanyl patch" in a "self-directed attempt to control

her pain." *Id.* at 7.  Although the Certificate of Death and postmortem examination report indicated that Ms. Thompson's death was the result of "multiple" drug intoxication, Docket No. 59-10 at 1-2, 7, there is also no evidence that the diazepam – or any other prescribed medication – would have been sufficient, in the absence of the fentanyl, to cause Ms. Thompson's overdose.  Additionally, Dr. Boroughf opined that the concentrations of diazepam and nordiazepam (a metabolite of diazepam) in Ms. Thompson's system were "exceptionally low and not expected to have any significant pharmacological effect" such that her "death was almost exclusively related to fentanyl." Docket No. 109-5 at 7.  In summary, there is no evidence that the medications prescribed to treat pain resulting from the August 11, 2013 car accident were a sufficient cause of Ms. Thompson's overdose.  And, in contrast to *Paul* and *Leja* cited above, there is no indication that the August 11, 2013 accident caused plaintiff to suffer a cognitive or psychological injury that would have impaired Ms. Thompson's judgment regarding the appropriate use of medication.  *Cf. Moore*, 192 P.3d at 432 (discussing rule that a defendant's negligence may be held to be the proximate cause of a person's suicide where the "negligence resulted in delirium, insanity, or, in some cases, other mental conditions that precluded the deceased from making a rational choice").

Based on the evidence presented, the Court finds that no reasonable jury could conclude that the automobile accident on August 11, 2013 was the proximate cause of Ms. Thompson's death.  Under Colorado law, the determination of whether a particular risk was foreseeable as a matter of law "depends in part on the common sense consideration of the risks created by various conditions and circumstances . . . and in part on the policy consideration of whether a defendant's responsibility should extend to

the results in question." *Walcott*, 964 P.2d at 612. Even assuming that Ms. Thompson used the fentanyl to alleviate pain resulting from injuries sustained in the car accident, *see* Docket No. 109-5 at 7 (opining that "Ms. Thompson's manner of death is consistent with that of an accident via what appears a self-directed attempt to control her pain to prolonged healing of traumatic cervical spine injury); Docket No. 58-3 at 2 (plaintiff's response to Interrogatory No. 10) (stating belief that the medications Cynthia Thompson was taking as the result of car accident caused her death), her voluntary decision to use a highly potent opioid under circumstances for which it was not prescribed does not fall within the scope of the risks created by the underinsured driver's negligence and would not have been foreseeable by a reasonably careful person. *Cf. Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 412 P.3d 751, 765 (Colo. App. 2015) (finding that, "although as a general matter it is reasonably foreseeable that a client will make business decisions in reliance on advice his or her attorney gives in connection with litigation . . . no reasonable attorney could be expected to foresee the harm that resulted here"; thus, the plaintiff's voluntary decision to cancel existing contracts and take townhomes off the market was not "within the scope of the risk created by Law Firm's negligence").[4] Accordingly, the Court

---

[4]The high potency of fentanyl is well recognized in this Circuit. *See United States v. Parker*, 413 F. App'x 90, 91 (10th Cir. 2011) (unpublished) (noting that fentanyl "is a controlled substance that is eighty to one hundred times more powerful than morphine"); *United States v. Page*, 317 F. App'x 806, 807 n.1 (10th Cir. 2009) (unpublished) (noting that "fentanyl is a group of prescription pain killers significantly more potent than morphine and having the same biological effect of heroin, with the exception that the fentanyls may be hundreds of times more potent" (internal quotation marks omitted)). Plaintiff's toxicology expert stated in his report that a 50 mcg/hr fentanyl transdermal patch is equal to approximately 120 mg of morphine per day, "roughly a 5-fold difference in potency compared to oxycodone." Docket No. 109-5 at

agrees with defendant that Ms. Thompson's fentanyl use constitutes an intervening act sufficient to break the chain of causation between the automobile accident and her death.

Plaintiff makes three arguments as to why summary judgment is inappropriate. First, plaintiff contends that defendant "has not met its summary judgment burden on proximate cause" because defendant has not argued that "there is proximate cause evidence in the record that [plaintiff] cannot overcome (such as expert medical opinions, treatment statistics, or any other evidence bearing on the likelihood of someone who is injured suffering further injury or death as a result of an accidental overdose on pain medications)." Docket No. 59 at 12. However, plaintiff's argument improperly attempts to shift the burden of persuasion onto the defendant. As stated above, a moving party who does not bear the burden of persuasion at trial "may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman*, 252 F.3d at 1115. Defendant has satisfied this requirement by arguing that plaintiff's evidence is insufficient to establish proximate causation, an essential element of plaintiff's declaratory judgment and breach of contract claims. *Id.* The burden therefore falls on plaintiff, not defendant, to present evidence demonstrating a genuine issue for trial. *Concrete Works of Colo., Inc.*, 36 F.3d at 1518.[5]

---

[5]The Court also rejects plaintiff's argument regarding the inadmissibility of Kristine Krist's affidavit. *See* Docket No. 59 at 7. While plaintiff is correct that Fed. R. Civ. P. 56(c)(4) requires that affidavits used to support a motion for summary judgment "be made on personal knowledge," Ms. Krist states in her affidavit that she was the

Plaintiff's second argument is that the Certificate of Death creates a genuine issue of fact regarding whether Ms. Thompson's use of pain medications was a foreseeable intervening cause of her death. Plaintiff relies on the portion of the Certificate that lists "[p]atient taking pain medication due to accident on 8/10/2013" under the heading "other significant conditions – [c]onditions contributing to death." Docket No. 59-10 at 1. Instructions published by the Centers for Disease Control and Prevention indicate that this section is meant to reflect "diseases or conditions contributing to death that were not reported" as part of the chain of events in the "immediate cause" section "and that did not result in the underlying cause of death." Docket No. 59-11 at 2. However, the instructions also provide that, "[i]f two or more possible sequences resulted in death, or if two conditions seem to have added together," the "immediate cause" section should reflect the condition that "most directly caused death" and the "other conditions" section should reflect "the other conditions or diseases." *Id.* Plaintiff argues that these directions show that "'cause' as used on the death certificate is not the same as legal causation." Docket No. 59 at 13. But even assuming plaintiff is correct, the Certificate of Death and accompanying instructions

---

claim representative "handling the investigation and evaluation" of plaintiff's claim for UIM benefits. *See* Docket No. 58-2 at 1, ¶ 2. This statement is sufficient to show that Ms. Krist has personal knowledge of the information submitted to defendant in support of plaintiff's claim. Moreover, the Court agrees with defendant that the admissibility of Ms. Krist's affidavit is a "non-issue." *See* Docket No. 62 at 2. Plaintiff has not identified any evidence creating a genuine dispute of fact as to the issues the Court finds dispositive of plaintiff's declaratory judgment and breach of contract claims. Finally, to the extent that the Court relies on the affidavit to resolve defendant's summary judgment motion, it does so only in a manner that favors plaintiff's position. *See infra* at 11 (citing affidavit [Docket No. 58-2] for proposition that diazepam was prescribed to treat pain resulting from injuries sustained in August 2013 accident).

establish only that Ms. Thompson's use of pain medications due to the August 2013 accident was a contributing cause of death. Such evidence does not undermine the Court's finding, detailed above, that Ms. Thompson's non-prescribed use of a highly potent opioid was an unforeseeable intervening cause of her death. *See Moore*, 192 P.3d at 436 (stating that a negligent actor may be relieved of liability "if, in order to bring about [the plaintiff's] injuries, it was necessary that the conduct *combine or join with an intervening cause which also contributed to cause the injuries*, but which intervening cause would not have been reasonably foreseen by a reasonably careful person under the circumstances" (emphasis added)).

Finally, plaintiff contends that a reasonable jury could conclude that Ms. Thompson's fentanyl use is "the type of conduct that is too frequent to be abnormal." *See* Docket No. 59 at 13-14. In doing so, plaintiff relies on *People v. Saavedra-Rodriguez*, 971 P.2d 223 (Colo. 1998), in which the Colorado Supreme Court stated that negligent medical treatment does not constitute a defense to homicide because it is "sufficiently ordinary" to be considered foreseeable. *Id.* at 226. While plaintiff is correct that "Colorado case law does not absolve tortfeasors of liability when the plaintiff's injuries result from medical treatment reasonably sought and directly related to the actions of the original tortfeasor," *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 81 n.2 (Colo. 2001), this case does not involve medical negligence but rather an individual's self-directed use of a non-prescribed and highly potent pain medication. *Cf. Saavedra-Rodriguez*, 971 P.2d at 226 (stating that, unlike simple negligence, "gross

negligence is sufficiently extraordinary to be classified as unforeseeable").[6] Plaintiff does not cite any facts or authority to support a conclusion that an individual in the underinsured driver's position could have reasonably foreseen such conduct. The Court therefore concludes, viewing the evidence in a light most favorable to plaintiff, that no reasonable jury could find that Ms. Thompson's death was a reasonably foreseeable consequence of the automobile accident on August 11, 2013. *See Boulders at Escalante LLC*, 412 P.3d at 766 (resolving proximate cause issue as a matter of law). Accordingly, defendant is entitled to summary judgment on plaintiff's claims for declaratory judgment and breach of contract.

## B. Bad Faith Breach and Unreasonable Denial of Benefits

Because plaintiff has not demonstrated a genuine issue of fact regarding his entitlement to UM/UIM benefits, his claims for bad faith breach of an insurance contract and unreasonable delay or denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 fail as a matter of law. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192-93 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if . . . coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage."); *Edge Constr., LLC v. Owners Ins. Co.*, No. 14-cv-00912-MJW, 2015 WL 4035567, at *6 (D. Colo. June 29, 2015) ("[I]n order to prevail on its statutory unreasonable delay/denial claim, [a plaintiff] first has to prove entitlement to benefits.").

---

[6] In his expert report, Dr. Boroughf describes how Ms. Thompson was "gradually initiated" on fentanyl patches and then later "weaned off" of them, *see* Docket No. 109-5 at 3, which is strongly suggestive of Ms. Thompson's knowledge of the medical supervision necessary to use fentanyl patches safely.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant State Farm's Motion for Summary Judgment [Docket No. 58] is **GRANTED**. It is further

**ORDERED** that the complaint [Docket No. 4] is dismissed with prejudice. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED September 20, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge